UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL DOYLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF MAINE, et al., )<br>)<br>Defendant. ) | 2:15-cv-00078-JAW |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Concluding that the state of Maine, state of Maine Judicial Branch, and Justice John O'Neil, Jr. are immune from liability under 42 U.S.C. § 1983, the Court dismisses this action for lack of subject matter jurisdiction.

I.   **BACKGROUND**

   A.   **Procedural Background**

On February 25, 2015, Michael Doyle filed a complaint in this Court, alleging that the Maine Supreme Judicial Court's Administrative Order No. JB-05-15 "violates the First Amendment of the United States Constitution under the Freedom of the Press clause and open courts provisions." *Pl.'s Compl. & Demand for Jury Trial* (ECF No. 1) (*Compl.*).  On March 18, 2015, the state of Maine, the state of Maine

Judicial Branch,[1] and Justice John O'Neil, Jr.[2] (Defendants) filed a motion to dismiss the Complaint. *Defs.' Mot. to Dismiss Compl.* (ECF No. 10) (*Defs.' Mot*.). Mr. Doyle responded on April 3, 2015. *Pl.s' Resp. to Defs.' Mot. to Dismiss* (ECF No. 11) (*Pl.s' Resp.*). The Defendants replied on April 16, 2015. *Defs.' Reply Mem. in Support of Mot. to Dismiss Compl.* (ECF No. 12) (*Defs.' Reply*).

## II. THE ALLEGATIONS AND THEORIES OF ACTION IN THE COMPLAINT

### A. The Factual Allegations

Mr. Doyle is a resident of Falmouth, Maine (*Compl.* ¶ 1), and is the editor and lead reporter for FalmouthToday.ME.[3] *Id.* ¶ 10. The state of Maine is, of course, a sovereign state. *Id.* ¶ 4(a). Justice John O'Neil, Jr. is a Justice of the Maine Superior Court. *Id.* ¶ 2. The state of Maine Judicial Branch is the entity that executes the judicial functions of the Maine state government. *Id.* ¶ 3. On January 16, 2015, Mr. Doyle made audio and video recordings of proceedings in York County Superior Court. *Id.* ¶ 10. This recording was approved before the proceeding by Justice O'Neil through a Media Notification—Requested Coverage of Court Proceeding form. *Id.*; *Jan. Notification.*

---

[1] In the Complaint, Mr. Doyle named the "Maine Judicial System" as a defendant. The Court is obligated to "construe liberally a *pro se* complaint," and as such interprets Mr. Doyle's intention as to name the state of Maine Judicial Branch as a defendant and proceeds accordingly. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).
[2] Mr. Doyle refers to Justice O'Neil as "Judge O'Neil" in the Complaint. In Maine the title for judges siting in the Maine Superior Court is "justice," and as such this Order refers to Justice O'Neil.
[3] Though Mr. Doyle never stated his title and affiliation with FalmouthToday.ME, the Court identified this information from two exhibits attached to the Complaint. *See Compl.* Attach. 2 *1/16/2015 Media Notification* (ECF No. 1) (*Jan. Notification)*; *Compl.* Attach. 3 *2/5/2015 Media Notification* (ECF No. 1) (*Feb. Notification*).

On February 5, 2015, Mr. Doyle again received permission from Justice O'Neil to record proceedings in York County Superior Court. *Compl.* ¶ 11-12; *Feb. Notification*. At this hearing, Justice O'Neil instructed Mr. Doyle to change his recording location, which Mr. Doyle found was too far from the speakers to be heard on playback.[4] *Id.* ¶ 12. Mr. Doyle responded to this change in location by writing Justice O'Neil a letter dated February 5, 2015, asking him to reconsider recording locations for the media by moving them back to the jury box. *Id.*; *Compl.* Attach. 4 *Letter to J. O'Neil* (ECF No. 1).

B.   **The Complaint**

In the Complaint, Mr. Doyle alleges the Maine Supreme Judicial Court's Administrative Order No. JB-05-15 (SJC Order) – which authorized Justice O'Neil to

---

[4]   The Defendants note that these proceedings involved a criminal defendant's Motion for Sanctions against the prosecution in *State v. Paul Olsen*. *Defs.' Mot.* at 2-3.; *Defs.' Mot.* Attach. 1 *Order on Motion for Sanctions* (ECF No. 10) (*Sanctions Order*). The Court takes judicial notice of this order, as it is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). *See, e.g., E.I. Du Pont de Nemours & Co. v. Cullen,* 791 F.2d 5, 7 (1st Cir. 1986) (taking judicial notice of a complaint filed in a state action); *United States v. Gordon,* 634 F.2d 639, 642 (1st Cir. 1980) (noting that a district court could take judicial notice of a federal indictment returned by a grand jury in another district).

In regard to moving Mr. Doyle's recording location at the February 5, 2015 hearing, Justice O'Neil explained:

> [A]t the second hearing there was a request by a media member to sit in the jury box to film the proceedings with his phone camera. That request was denied. The basis for that denial is set forth in Administrative Order JB-05-15, which indicates the Court has the discretion over the method of recording court proceedings. The Court has an obligation to balance the need for appropriate media coverage with ensuring that the coverage of such proceedings is done in a way that will minimize interference with witnesses' natural actions and behaviors. This is why where multiple video sources are requested the Court will require a single video camera with media pooling. This is to ensure that witnesses act naturally and are, as much as possible, not overtly aware of the cameras in the courtroom. This is akin to environments such as retail establishments, hospital facilities, or other institutions where recording occurs, but is done in a way that is unobtrusive. This was the basis for the Court requiring that any recording of this proceeding be done from the audience and not directly in view of a witness who is only a few feet away.

*Sanctions Order* at 1 n.1.

control if and how camera and audio recordings are made in the courtroom – "violates the First Amendment of the United States Constitution under the Freedom of the Press clause and open courts provisions."[5]  *Compl.* ¶ 9.  Mr. Doyle argues that the SJC Order "violates [his] Constitutional Rights to cover the courts" because it gives Maine state judges and justices the authority to decide whether a hearing will be recorded.  *Id.* ¶ 13(a).  In addition to his facial challenge of the SJC Order, Mr. Doyle further asserts that:

> Defendant [Justice] O'Neil ordered the Plaintiff to record from a location that guaranteed little or no access to the proceedings.  It was not possible to hear the majority of the questions of the lawyers and the answers of the witness on [February 5, 2015].  The net effect would be similar to watching the proceedings from behind a glass wall in a nearly sound proof room where only parts of what was being said could be heard . . . . The [SJC Order] giving the arbitrary control of where a member of the press can sit functionally violates Plaintiff's Constitutional Rights.[6]

*Id.* ¶ 13(b).  The Complaint proceeds to identify a number of additional issues with the SJC Order, such as: conflicts between how the rules apply to trial courts versus the Maine Supreme Judicial Court, *Id.* ¶ 13(1),(6); the presiding judicial officers' authority to locate recording equipment in the courtroom, *Id.* ¶ 13(3),(5); and a lack

---

[5]    The SJC Order pertains to camera and audio recordings for criminal and civil proceedings in Maine state courts, ordering:
>   [n]o cameras or audio recording equipment shall be allowed in the courtroom unless coverage of any events or proceedings has been authorized pursuant to this order.  Justices of the Supreme Judicial Court, justices of the Superior Court, and judges of the District Court are authorized to consider camera and recording coverage, and to permit it in their sole discretion if the integrity of the court proceedings will not be adversely affected.

*Compl.* Attach. 1 *Administrative Order 05-15* (ECF No. 1) (*SJC Order*).

[6]    In support of his argument Mr. Doyle cites a YouTube video as Exhibit E of the Complaint. Unfortunately, the Court could not access this video using the link provided by Mr. Doyle, http://youtu.be/5y49fAuSfn0.  However, the Court does not require access to the exhibit to render its decision.

of clarity as to what constitute "appropriate circumstances" for methods of recording.[7] *Id.* ¶ 13(4). Finally, Mr. Doyle contends the SJC Order's limitation on appellate review of judicial officer's decision whether to allow coverage is "a violation of Due Process, another right guaranteed in the Constitution, and as such should be struck." *Id.* ¶ 13(8).

As relief, Mr. Doyle seeks that the entire SJC Order "be struck in whole," that he be allowed "to video and audio record all court proceedings not barred by statute at a location that provides an audio that can be heard at playback," and that the SJC Order "be voided and such other relief that may be deemed appropriate." *Id.* at 8-9.

## III. THE PARTIES' POSITIONS

### A.  Defendants' Motion to Dismiss

#### 1.  Defendants' Motion to Dismiss Under Rule 12(b)(6)

The Defendants note that Mr. Doyle did not set forth a statutory basis for any of his claims and that they presume he is relying on 42 U.S.C. § 1983. *Defs.' Mot.* at 5. As such, the Defendants argue that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and conclude that the claims brought against state of Maine and the state of Maine Judicial Branch must fail as a matter of law. *Id.* at 6.

---

[7]  Again, Mr. Doyle cites a YouTube video as Exhibit F of the Complaint, and again the Court could not access this video using the link provided by Mr. Doyle, http://youtu.be/5y49fAuSfn0. However, the Court does not require access to the exhibit to render its decision. Additionally, Mr. Doyle refers to other legal proceedings regarding Maine state trial justices and issues concerning the media's access to courtrooms. *Compl.* ¶ 13(4). Mr. Doyle has not named these justices as defendants in the Complaint and he has not explained the relevance of these other proceedings to the case at hand.

The Defendants next argue that, as the United States Supreme Court has affirmatively held that there is no right to record judicial proceedings, all of Mr. Doyle's First Amendment claims must fail as a matter of law. *Id.* Moreover, the Defendants suggest that the First Amendment right implicated is actually one of reasonable access to the courts by the public and the media, and that it is undisputed that Mr. Doyle was able to attend the proceedings on February 5, 2015. *Id.* at 7.

Subsequently, the Defendants address Mr. Doyle's due process claim in regard to his lack of ability to appeal any decision pertaining to media coverage pursuant to the SJC Order, asserting Mr. Doyle lacks the constitutional standing to bring such a claim. *Id.* at 8-9. The Defendants argue that because it is undisputed that Mr. Doyle was granted permission to record judicial proceedings on February 5, 2015, and because he has no First Amendment right to record judicial proceedings, Mr. Doyle has not "sustained or is immediately in danger of sustaining some direct injury" and thus lacks standing. *Id.* at 9. In the alternative that standing exists to bring a due process claim, the Defendants assert that Mr. Doyle has not stated a cognizable claim, as he has not alleged he was deprived of a protected liberty or property interest without due process. *Id.* at 9-10.

Finally, the Defendants claim that, because Mr. Doyle has not identified any statutes or constitutional provisions, he has no cognizable claim for relief for his other allegations that the SJC Order conflicts with rules of "free access" and affords the Maine judiciary too much discretion. *Id.* at 10.

### 2.     Defendants' Motion to Dismiss Under Rule 12(b)(1)

The Defendants argue that, pursuant to the Eleventh Amendment and sovereign immunity, any claims against the state of Maine are barred because the state has not consented to suit, and because Congress did not abrogate the states' sovereign immunity by enacting 42 U.S.C. § 1983. *Id.* at 10-11. The Defendants further contend that sovereign immunity also applies to state agencies and thus the state of Maine Judicial Branch is immune from suit. *Id.* As such, the Defendants urge the Court to dismiss all such claims under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction and/or under FED. R. CIV. P. 12(b)(6). *Id.*

### B. Plaintiff's Response

Mr. Doyle concedes that the caselaw cited by the Defendant "may, or may not, apply in this instance," but argues "[the caselaw] may be an incorrect application for this case." *Pl.s' Resp.* at 2. Mr. Doyle emphasizes that "[t]he fact remains that in this case the press was allowed to record from the very location that a month later was deemed 'too close' to the witness testifying and would be a 'distraction.'" *Id.* Mr. Doyle argues that because the witnesses involved in the February 5, 2015 hearing were a retired police officer and the current Chief of Police for the town of Elliot, Maine, "neither of which would likely be distracted by a nearby camera recording their testimony." *Id.* Mr. Doyle concludes that "[t]his action reduced to its basic premise is, can this court, or any court render any part of the Bill of Rights inoperative by fiat?" *Id.*

### C. Defendants' Reply

7

The Defendants note that Mr. Doyle did not challenge their statement of facts or any of their cited cases. *Defs.' Reply* at 2. Further, the Defendants note that "Mr. Doyle bases his argument solely on his contention that neither of the witnesses 'would likely be distracted' by his presence in the jury box, even though he would be holding a phone camera a few feet away from them." *Id.* The Defendants conclude that Justice O'Neil's decision was not an abuse of discretion and did not violate Mr. Doyle's constitutional rights. *Id.*

## IV. DISCUSSION

### A. Legal Standard for Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

The Court first addresses the motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), because if the Court in fact lacks jurisdiction, it need go no further. FED. R. CIV. P. 12(b)(1).

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject-matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (internal citation omitted). "The burden falls on the plaintiff to clearly allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Dubois v. United States Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citation and internal quotation marks omitted). In ruling on a Rule 12(b)(1) motion, the Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). In addition, "the court may consider whatever

8

evidence has been submitted." *Id.* Unlike in a 12(b)(6) motion, "[t]he attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 [summary judgment] motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

### B. The Motion to Dismiss under 12(b)(1)

The Court is obligated to "construe liberally a *pro se* complaint" and attempt to "intuit the correct cause of action, even if it is imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Therefore, as Mr. Doyle has not put forth a statutory basis for any of his claims, the Court finds that 42 U.S.C. § 1983[8] provides the cause of action for his claims of First Amendment violations by the Defendants.[9]

#### 1. State of Maine

The Supreme Court of the United States has held that, pursuant to the Eleventh Amendment and sovereign immunity, a state may not be subject to a suit in federal court unless: (1) the state has consented to suit, or (2) Congress has acted

---

[8] 42 U.S.C. § 1983 states in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[9] This comports with Supreme Court precedent that finds "[a] broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of '*any* rights, privileges, or immunities secured by the Constitution and laws.'" *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (emphasis in original). Moreover, the Supreme Court has "given full effect to [the statute's] broad language, recognizing that § 1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights.'" *Id.* at 445 (internal citations omitted).

with clear "intent to abrogate the States' immunity from suit." *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 786 (1991)).

The state of Maine "regards the immunity from suit as 'one of the highest attributes inherent in the nature of sovereignty,'" *Cushing v. Cohen,* 420 A.2d 919, 923 (Me. 1980) (quoting *Drake v. Smith,* 390 A.2d 541, 543 (Me. 1978)), and adheres to the general rule that "a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity." *Cushing*, 420 A.2d at 923. In the Complaint, Mr. Doyle has not attempted to establish a waiver of immunity under this standard, and as such the Court concludes, in the absence of specific authority conferring waiver, the state of Maine has not consented to suit. Additionally, the Supreme Court has found that there is insufficient indication that Congress intended to make state governments liable under § 1983, and thus the Eleventh Amendment bars § 1983 suits against state governments in federal court. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, the claim against the state of Maine brought by Mr. Doyle is dismissed for lack of subject-matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

### 2. State of Maine Judicial Branch

Sovereign immunity under the Eleventh Amendment applies not only to the state, but also to an "arm of the state." *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). The state of Maine Judicial Branch qualifies as an arm of the state, as it derives its authority from the Maine Constitution and it

effectuates the judicial power of the state of Maine to administer justice and protect individual rights.[10] *See* ME. CONST. art. VI, §§ 1-5; 4 M.R.S. §§ 1 *et. seq*. Thus, as sovereign immunity applies, the claim against the state of Maine Judicial Branch brought by Mr. Doyle is dismissed for lack of subject-matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

### 3. Justice O'Neil

Though Justice O'Neil did not raise subject matter jurisdiction as a defense against Mr. Doyle's claim, it is within the Court's authority to raise the issue sua sponte. FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks

---

[10] The First Circuit set forth in *Wojcik* a multi-factor analysis to determine whether an entity is an arm of the state entitled to immunity, assessing:
> (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function is governmental or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions.

*Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). The *Wojcik* test, however, is applicable only when determining whether organizations that are not "organic part[s] of the central government," such as a state lottery commission or sewer authority, are arms of the state. *See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth*., 991 F.2d 935, 939 (1st Cir. 1993), *holding modified by Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & Caribbean Cardiovascular Ctr. Corp*., 322 F.3d 56 (1st Cir. 2003).

The United States Supreme Court has made clear that an agency of state government, such as the department of health or treasury are part of the state for Eleventh Amendment immunity purposes. *See, e.g.*, *Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459 (1945). Similarly, the Supreme Court found that state universities are part of the state for Eleventh Amendment immunity purposes. *See Regents of University of California v. Doe*, 519 U.S. 425 (1997). As such, it is evident that the state of Maine Judicial Branch, finding its explicit authority in the Maine Constitution, is an "organic" part of the state of Maine's government and qualifies as an arm of the state for Eleventh Amendment sovereign immunity purposes.

subject-matter jurisdiction, the court must dismiss the action"); *see, e.g., Louisville & N.R. Co. v. Mottley,* 211 U.S. 149 (1908) (Supreme Court raising objection to federal court jurisdiction).

Section 1983 explicitly exempts judges from its purview, stating "[e]very person . . . shall be liable . . . except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[11] 42 U.S.C. § 1983. Under § 1983 absolute immunity is afforded to judges only for judicial tasks, not for administrative, legislative, or executive actions. *Forrester v. White*, 484 U.S. 219, 225-29 (1998). An act may be administrative for some purposes and still be judicial for purposes of immunity. *See Rheuark v. Shaw,* 628 F.2d 297, 304–05 (5th Cir. 1980). "Each act must be examined to determine if it was a function normally performed by a judge and if the parties were dealing with the judge in his judicial capacity." *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985). In *Martinez*, it was found that a judge, in taking security measures to exercise control over the courtroom, was performing a judicial task for purposes of immunity. *Id.* at 434.

Justice O'Neil was acting within his judicial capacity when he required Mr. Doyle to move from the jury box to a location farther from the witnesses at trial: he was sitting as a Justice of the Maine Superior Court in a court of law and ordered Mr. Doyle to move as "[t]he Court has an obligation to balance the need for appropriate

---

[11] Section 1983 was amended in 1996 to explicitly exempt judicial officers from injunctive relief. Federal Courts Improvement Act of 1996, Pub. L. No. 104–317, 110 Stat. 3847.

12

media coverage with ensuring that the coverage of such proceedings is done in a way that will minimize interference with witnesses' natural actions and behaviors." *Sanctions Order* at 1 n.1. Therefore, sovereign immunity applies under § 1983 and the claim against Justice O'Neil is dismissed for lack of subject-matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

## V. CONCLUSION

The Court GRANTS the Defendants' Motion to Dismiss (ECF No. 10).

SO ORDERED.

/s/John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2015